SUMNER A. HAYWARD & others *vs.* THE INHABITANTS OF SCHOOL DISTRICT NUMBER THIRTEEN IN NORTH BRIDGEWATER.

If the inhabitants of a school district, in pursuance of the authority conferred upon them by the Rev. Sts. *c.* 23, § 48, prescribe the mode of warning future meetings, the mode so prescribed must be pursued so long as the vote therefor remains unrescinded, and meetings cannot afterwards be called in the manner specified in §§ 46 and 47, even though the officers of the district refuse or neglect to pursue the mode prescribed.

The inhabitants of a school district having voted to build a school-house, and appointed a committee for that purpose, the committee made a contract with an individual to build the house; subsequently, the district voted to rescind their votes relative to the building of a house, and appointed a committee to notify the contractor of such vote being passed, and to forbid him from proceeding to execute the contract; the committee gave the contractor notice accordingly, and he thereupon notified the committee, that he should abandon the contract, unless they became personally responsible to him; the committee then made their bond to the contractor, by which they bound themselves individually to pay for the house, and the contractor proceeded and built the same according to his contract, and the committee paid him therefor out of their own funds: In an action by the committee against the district for the money so paid, it was held, that the plaintiffs were not entitled to recover, although the prudential committee of the district had caused the house so built to be occupied for the purposes of a school for the district.

The inhabitants of a school district, against whom an action is pending, having voted to be defaulted therein, the most proper mode for the plaintiff in such action to pursue is, to call in question the right of the agent or counsel of the district to appear further, rather than to move that the defendants be defaulted.

THIS was an action of assumpsit, tried in this court before *Wilde*, J., to recover a sum of money alleged to have been paid by the plaintiffs for the building of a school-house for the defendants.

Before proceeding to trial, the plaintiffs moved that the defendants be defaulted ; and, as the ground of the motion, introduced the record of a meeting of the defendants, held on the 4th of April, 1848, at which it was voted, that the district should be defaulted in this action. The meeting, at which this vote was passed, was called by the selectmen of the town of North Bridgewater, who, on an application made to them by three of the qualified voters of the district, issued their warrant for calling the meeting to one of the applicants, by whom the inhabitants of the district were personally notified thereof, seven days before the time of meeting.

The defendants then introduced the records of the district, by which it appeared, that at a regular meeting held on the 28th of March, 1846, it was voted, "that the prudential committee call all future meetings of the district, by issuing his warrant to the clerk, who shall post up notices of the meeting on John Tilden's and W. P. Howard's store doors." This vote had never been rescinded.

The plaintiffs thereupon offered to prove, that prior to the issuing of the warrant by the selectmen, the prudential committee had issued his warrant to the clerk, who refused to notify the meeting. This was denied by the defendants; but the judge, being of opinion, that if true, the refusal of the clerk would not authorize the calling of a meeting by the selectmen, held that the meeting of the 8th of April, 1848, was illegal, and refused the motion to default.

The trial then proceeded, and, from the report thereof by the presiding judge, the following facts appeared : —

At a meeting of the district, which was duly called and warned, held on the 29th of July, 1846, it was voted, under a proper article in the warrant for the purpose, to build a school-house for the use of the district ; to purchase a lot of land, upon which to erect a school-house ; that a committee of five be chosen to select and purchase a lot of land ; to choose a committee of three to build a house ; and that the building committee draw a plan of a school-house, and present it at an adjournment of the meeting. Committees were ap-

pointed in pursuance of these votes, — the plaintiffs being the committee to build the house, — and the meeting adjourned to the 8th of August, 1846.

At the adjourned meeting, on the 8th of August, 1846, it was first voted, that the committee report ; whereupon the committee for selecting and purchasing a lot of land made a report, as to the prices of certain lots, which was accepted. It was then voted, that the committee be instructed to purchase the lot next south of Sumner A. Hayward's ; that the building committee go forward, and procure a plan, and proceed to build forthwith ; that the committee be instructed not to exceed $1000, in the cost of the house ; that the sum of $1000 be raised, to be assessed on the polls and estates of the district, according to law ; that the clerk certify the last vote to the assessors, and that the assessors instruct the collector to collect the tax some time before the 1st of November next ; and that the prudential committee be instructed not to expend any money belonging to the district, until a house shall be erected for the use of the district.

The committee, appointed to select and purchase a lot of land, proceeded according to the instructions given them, and took a deed of the lot above designated, in the name of the district, on the 18th of August, 1846. This deed was regularly acknowledged and recorded.

A meeting of the district, duly called and warned, was held on the 19th of August, 1846, for the purpose of seeing (as stated in the warrant for calling the same) if the district would vote to rescind any or all of the doings of their last meeting on the 8th of August. This meeting was dissolved without coming to any vote.

The plaintiffs, in pursuance of the authority conferred upon them, as a committee of the district for building a school-house, under the above recited votes, entered into a written contract, bearing date the 5th of September, 1846, with Apollos E. Howard, to build a school-house for the district, according to a plan and specifications, and for a price, agreed upon by the parties. The plaintiffs also made their personal

bond to Howard, conditioned for the payment of the price for building the school-house, according to the contract. This instrument, as well as the written contract, was dated on the 5th of September, 1846; but it was in evidence, that the bond was not actually written and executed, until about ten days after Howard had been notified, as hereinafter stated, of the rescinding of the contract. It appeared in evidence, that the contract between the plaintiffs and Howard was executed about four o'clock in the afternoon of the 5th of September; and that it was stated by the plaintiffs, at the time, that the district was to hold a meeting in the evening of that day, for the purpose of rescinding their votes to build a school-house; and that the plaintiffs wished to complete the contract before the meeting.

At a regular meeting of the district, held on the 5th of September, 1846, under an article in the warrant for the purpose, the district voted " to rescind all their doings " at the two previous meetings held on the 28th of July and 8th of August; and at a regular meeting, held on the 28th of September, it was voted " to choose a committee to call on the several committees of the district, chosen at a former meeting to buy land and contract for building a school-house for the district, for all deeds and contracts, if any they have made or received, for or in behalf of the district ; " and the members of this committee being then appointed, it was also voted, that they " serve as a committee to superintend the whole subject of building a school-house, or any thing in relation to that subject, that the interests of the district may require." At these two meetings, on the 5th and 28th of September, the plaintiffs were present.

A day or two after the meeting on the 28th of September, the committee appointed at that meeting called on Howard, the contractor to build the school-house, and informed him that the district had voted to rescind their doings in relation to building a school-house, and that they were appointed a committee to forbid his proceeding to build.

The committee, at the same time, in the name of the dis

trict, offered to indemnify him, if he had sustained any loss in consequence of the contract to build. It appeared, that on the day when they called on him, he had been to a lumber dealer, and had selected his lumber, but that he did not consider himself bound to take it. This was all he had done towards an execution of the contract.

A few days subsequently, Howard called on the building committee originally appointed, the plaintiffs, and informed them of what had occurred, and that he should abandon the contract, unless they became personally responsible to him. The plaintiffs directed him to go on with the contract, and executed the bond before referred to, by which they became personally responsible to pay him for the building. Howard thereupon proceeded and built a school-house, according to his contract, on the land which had been purchased for the purpose by the committee of the district, and the plaintiffs paid him therefor.

It appeared, by the records of the town of North Bridgewater, that at the annual meeting of the town in 1847, and also in 1848, Davis Kingman was regularly chosen prudential committee of district No. 13; and it was in evidence, that he caused a school to be kept in the house built by Howard, for five months, commencing on the 3d of May, 1847, and also for four months during the following winter, and that he had opened a school therein which was then (May, 1848) in operation. It was also in evidence, that a majority of the voters of the district had never sent to or patronized the schools thus kept; and that the district, in the spring of 1847, prior to the town meeting at which Kingman was chosen prudential committee, elected for themselves another person as such committee for the ensuing year.

The judge being of opinion, upon this evidence, that the plaintiffs could not recover, a nonsuit was entered. If the court should be of opinion, that the motion for a default was improperly overruled, a default is to be entered; otherwise, the nonsuit is to stand, or to be set aside, and a judgment entered for the plaintiffs, according to the opinion of the court.

*J. H. Clifford* and *E. Ames*, for the plaintiffs.

*H. E. Smith*, for the defendants.

FLETCHER, J.   This was an action of assumpsit to recover a sum of money alleged to have been paid by the plaintiffs for building a school-house for the defendants.   A motion was made by the plaintiffs that the defendants be defaulted.   As the ground of this motion, it appeared, that at a meeting of the district held on the 4th of April, 1848, it was voted that the district be defaulted.   This meeting was called by a warrant issued by the selectmen in the manner prescribed by the statute.

By the Rev. Sts. *c.* 23, § 48, it is provided, that every school district may prescribe the mode of warning all future meetings of the district, and they may also direct by whom and in what manner such meetings shall be called.   It appeared, that at a regular meeting of the district, held March 28th, 1846, it was voted, that the prudential committee call all future meetings by issuing his warrant to the clerk.   Standing thus, it must be quite clear, that the district having the legal right of prescribing by whom and in what manner meetings shall be called, and having duly exercised that right, and prescribed the person by whom and the manner in which meetings shall be called, that constitutes the law on the subject, and meetings must be called by the person and in the manner thus prescribed by the district.

But in this case, the plaintiff offered to show, that previous to the issuing of the warrant by the selectmen, the prudential committee issued his warrant to the clerk, who refused to notify the meeting.   This was denied by the defendants.   But the presiding judge ruled, that the refusal of the clerk to notify a meeting, if true, would not alter the case, and accordingly held that the meeting of April 4th, 1848, which was called by the selectmen, was illegal, and therefore refused the motion to default.   This ruling is fully approved and sustained by the whole court.   The statute gives the district the right to direct by whom and in what manner meetings shall be called.   When the district has acted and decided

upon the subject, the idea that meetings may be called in a manner different from that prescribed by the district is wholly inconsistent with the right expressly given to the district to direct in the matter. If the selectmen still retained the right to call meetings, then the prudential committee might call a meeting on one day, and the selectmen might call another at the same time, or at another time, which would produce much confusion. The legal mode, therefore, and the only legal mode, of calling meetings, was for the prudential committee to issue his warrant to the clerk. The refusal of the clerk to notify the meeting surely could not alter the law. Whatever else may be the consequences of public officers' neglecting or refusing to do their duty, the law surely cannot be changed by such neglect or refusal.

As a matter of form, the more correct mode of proceeding, perhaps, would have been, instead of moving for a default, to have objected to the right of counsel to appear for the district, after the vote of the district to be defaulted. The authority of counsel to appear, after that vote, was really the question to be settled, and this question depended on the legality of the meeting at which the vote was passed.

[The judge then briefly recapitulated the facts, as already stated, and proceeded.]

In regard to the grounds of the plaintiffs' action, there is no just principle whatever upon which this claim can be maintained. The fact, that the prudential committee caused a school to be kept in the building, cannot affect the legal rights of the parties. The original contract was made with Howard by the plaintiffs in their capacity as a committee, in the name and in behalf of the district. The parties to that contract were the district and Howard. That contract was annulled by the concurrent act of both parties. The district expressly rescinded it, and Howard refused to proceed and did not proceed upon it. The plaintiffs then entered into a new contract, in their own individual names, and on their own individual accounts. Their authority to act in behalf of the district had completely ceased. They did not act or profess

36 *

to act in behalf of the district. They acted not only without the authority, but against the known and declared wishes, of the district. If the plaintiffs could recover in this case, a man might at any time build a house or other building on the land of his neighbor, without any right or authority, and against the declared wishes of the owner, and then call on him to pay the cost. There is no principle of law, equity, or morals, upon which this suit can be maintained. The nonsuit must be confirmed.